UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| MELANIE SANFORD,<br><br>    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Case No. 20-cv-11983<br>Honorable Paul D. Borman<br>Magistrate Judge Elizabeth A. Stafford |

**REPORT AND RECOMMENDATION ON CROSS-MOTIONS
FOR SUMMARY JUDGMENT [ECF NOS. 11, 14]**

Plaintiff Melanie Sanford appeals the final decision of defendant Commissioner of Social Security (Commissioner), which denied her application for disability insurance benefits (DIB) and supplemental security income (SSI) under the Social Security Act. Both parties have filed summary judgment motions, referred to this Court for a report and recommendation under 28 U.S.C. § 636(b)(1)(B). After review of the record, the Court finds that the administrative law judge (ALJ) erred in overlooking Sanford's cervical spine condition, and thus **RECOMMENDS** that:

- Sanford's motion, ECF No. 11, be **GRANTED**;

- the Commissioner's motion, ECF No. 14, be **DENIED**; and
- the Commissioner's decision be **REMANDED** under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this report and recommendation.

I.   **Background**

**A. Sanford's Background and Disability Applications**

Born in December 1971, Sanford was 43 years old when she applied for DIB and SSI in 2016, with an alleged disability onset date of July 3, 2015. ECF No. 9, PageID.51, 55. She had past relevant work as a "bartender" and "server/waitress." *Id.*, PageID.55. Sanford first claimed disability from chronic lower back pain, pain in both legs down to her calves, depression, anxiety, chronic pain, mood swings, migraines. *Id.*, PageID.92, 364. She later added a claim of severe impairment of her cervical spine. *Id.*, PageID.75.

Sanford's 2016 application was not her first request for disability benefits; ALJ B. Lloyd Blair denied her application for DIB and SSI in July 2015 though she found that Sanford had severe impairments of degenerative disc disease of the lumbar spine at L5 to S1 with postsurgical radiculopathy but was not disabled. *Id.*, PageID.128-137.

For the current application, ALJ Anthony R. Smereka held a hearing in May 2019, during which Sanford and a vocational expert (VE) testified. *Id.*, PageID.49-57, 64-88.  The ALJ found Sanford not disabled.  *Id.*  The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.  *Id.*, PageID.35-37.  Sanford timely filed for judicial review.  ECF No. 1.

### B. The ALJ's Application of the Disability Framework Analysis

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps.  First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled.  20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4).  Second, if the claimant has not had a severe impairment or a combination of such impairments[1] for a continuous period of at least 12 months, no disability will be found.  *Id.*  Third, if the

---

[1] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities."  §§ 1520(c); 920(c).

3

claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.* If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity (RFC), and will find the claimant not disabled if he or she can still do past relevant work. *Id.* At the final step, the Commissioner reviews the claimant's RFC, age, education, and work experiences, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Sanford was not disabled. At the first step, he found that Sanford had not engaged in substantial gainful activity since the alleged onset date of July 3, 2015. ECF No. 9, PageID.51. At the second step, he found that Sanford had the severe impairments of degenerative disc disease of the lumbar spine at L5-S1 with postsurgical radiculopathy. *Id.*, PageID.52. Next, the ALJ concluded that none of Sanford's impairments, either alone or in combination, met or medically equaled the severity of a listed impairment. *Id*.

Between the third and fourth steps, the ALJ found that Sanford had the RFC to perform light work, except

> no hazards, including work at unprotected heights or around dangerous, moving machinery; no climbing of any ladders, scaffolds, or ropes; no more than occasional climbing of ramps or stairs, balancing, stooping, kneeling, and crouching; no crawling; no reaching above shoulder level; the need for a sit/stand option allowing the worker to perform the work either sitting or standing and allowing for a change of position every 30 minutes; no driving in the course of employment and no foot controls; no exposure to vibration; restricted to unskilled work meaning the ability to understand, carry out and remember simple instructions, to respond appropriately to supervision, coworkers, and usual work situations, and to deal with changes in a routine work setting; and no fast production pace work where the pace is set by others.

*Id.*, PageID.53.  At step four, the ALJ found that Sanford cannot perform any past relevant work as a "bartender" and "server/waitress." *Id.*, PageID.55.  At the final step, after considering Sanford's age, education, work experience, RFC, and the testimony of the VE, the ALJ determined that there were jobs in significant numbers that Sanford could perform, including positions as a packer, bench assembler, and inspector.  *Id.*, PageID.56.

## II.    Analysis

Under § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and conformed with proper legal standards.  *Gentry v. Comm'r of Soc. Sec.*,

5

741 F.3d 708, 722 (6th Cir. 2014).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted).  Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence.  *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Sanford argues that the ALJ erred by finding that her mental impairments were "non-severe" and neglecting her cervical spine and gastrointestinal (GI) impairments.  ECF No. 11, PageID.1430.  She also argues that the ALJ's RFC assessment is not supported by substantial evidence.  *Id.*  The Court finds that the ALJ committed reversible error by overlooking Sanford's cervical spine impairment at step two and when formulating the RFC.

The ALJ never mentioned Sanford's alleged cervical impairment at step two.  A severe impairment is "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c), 416.920(c).  Basic work activities are "abilities and aptitudes necessary to do most jobs."  20 C.F.R.

6

§§ 404.1522(b), 416.922(b) (examples listed).  Courts construe "step two as a *de minimis* hurdle, intended to 'screen out totally groundless claims.'" *Kestel v. Comm'r of Soc. Sec.*, 756 F. App'x. 593, 597 (6th Cir. 2018) (quoting *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 576 (6th Cir. 2009)).  The claimant bears the burden of showing the severity of her medically determinable impairments.  *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987).

Sanford meets her minimal burden of showing that she had a severe cervical impairment.  At the hearing, Sanford's counsel described Exhibit "12F, Page 8" as containing "a new and significant severe impairment."  ECF No. 9, PageID.75.  That exhibit is a report of an August 2015 MRI scan of Sanford's cervical spine.  *Id.*, PageID.836-837.  The MRI found:

1. Scoliosis of cervical spine with convexity towards right side.
2. Grade retrolisthesis of C4 over C5 vertebra.
3. C3-4: Broad based posterocentral disc protrusion compressing the thecal sac.
4. C4-5: Broad based posterocentral disc extrusion (2mm caudal migration) with small bony spur compressing the thecal sac, causing moderate narrowing of the right and mild to moderate narrowing of the left neural foramina.  There is moderate central canal stenosis with indentation on the anterior border of the cervical cord.  Bilateral uncovertebral hypertrophy is seen.
5. C5-6: Broad based posterocentral disc protrusion compressing the thecal sac and along with moderate uncovertebral causing moderate narrowing of bilateral neural foramina and mild to moderate central canal stenosis.

7

> 6. C6-7: Broad based posterocentral disc protrusion compressing the thecal sac, causing moderate narrowing of the left and mild to moderate narrowing of the right neural foramina. There is mild to moderate central canal stenosis. Bilateral uncovertebral hypertrophy is seen.

*Id.*

Sanford's orthopedist, Eric Kovan, DO, also documented examinations of her cervical spine after the earlier disability decision. In July 2015, he reported "severe tenderness in cervical and lumbar area with range of motion limitations." *Id.*, PageID.514. Dr. Kovan said in his October 2015 report that he performed a "trigger point injection" for her cervical spine, injecting lidocaine in the "interspinous ligament for her neck pain and stenosis" in two locations. *Id.*, PageID.461-462. He noted that she showed an "increase in cervical interspinous ligament pain." *Id.*, PageID.462.

In December 2015, Dr. Kovan performed another trigger point injection, injecting lidocaine in "trigger points in [her] neck" in six locations. *Id.*, PageID.458-459. He also reported that she had "cervical and lumbar fusion," "trigger points and spasms in the back with decreased range of motion in the cervical spine and lumbar spine," and "increasing symptomatology throughout." *Id.*, PageID.459. And in March 2016, he injected her "cervical paraspinal musculature and trapezius" with lidocaine

8

in six locations, noting that she had "stenosis of the cervical spine" and "cervical myositis." *Id.*, PageID.525-526. In a letter, Dr. Kovan said that Sanford had "significant inflammation of cervical spine with multiple disc abnormalities and stenosis." *Id.*, PageID.443.

In January 2017, the state consultative examiner reported that Sanford "complains of pain and stiffness in the cervical spine" and that she received a "cortisone injection in her cervical spine in the past." *Id.*, PageID.634-636. The report assessed the degree of movement for her neck and found "neck stiffness, perhaps with spondylosis of the cervical spine, but no tenderness." *Id.*, PageID.636.

Despite this evidence, the ALJ did not mention Sanford's cervical spine impairment at step two; he identified it as neither a severe nor nonsevere impairment. ECF No. 9, PageID.52. His error in assessing the severity of Sanford's cervical spine impairment would have been harmless if he had considered that impairment in the remaining steps of his analysis. *Kestel*, 756 F. App'x at 597. But the ALJ neither cited nor mentioned the significant MRI findings at any step in his decision. ECF No. 9, PageID.52-55. And when assessing Sanford's RFC, the ALJ referred to Sanford's "alleged neck pain and headaches," but claimed that Dr. Kovan's "physical exams and imaging do not support these assertions." *Id.*, PageID.54. To

9

support that conclusion, the ALJ cited only Dr. Kovan's February 2018 examination report, not the MRI findings.  *Id.*, (citing ECF No. 9, PageID.559).  The ALJ also made no mention of the state examiner's assessment of possible spondylosis of the cervical spine or Sanford's testimony at the hearing that she "can't look down…continuously."  *Id.*, PageID.77, 636.

The ALJ misstated other parts of the record in the RFC assessment.  He said that Sanford "was previously limited to a range of light work," a finding that he adopted.  ECF No. 9, PageID.54.  But ALJ Blair's 2015 decision found that Sanford was limited to "sedentary work," which is more restrictive than "light work."  *Id.*, PageID.131.  And the ALJ stated that, after the 2015 decision, Sanford had no pain treatment "that would suggest that she is debilitated by pain." *Id.*, PageID.55.  But as noted, Sanford had trigger point injections in her neck after the 2015 decision.  *Id.*, PageID.458-462, 525-526.

The Commissioner correctly notes that an "ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party."  *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) (citations and quotation marks omitted).  Even so, the ALJ's decision must be supported by substantial evidence, not

"fragments of the record." *Laskowski v. Apfel*, 100 F. Supp. 2d 474, 482 (E.D. Mich. 2000). Stated differently, "Substantiality of the evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Trudell ex rel. Bushong v. Apfel*, 130 F. Supp. 2d 891, 895 (E.D. Mich. 2001). And when an ALJ overlooks or misconstrues evidence, the reviewing court is unable to make a meaningful assessment of whether the ALJ's decision is supported by substantial evidence. *Souris v. Comm'r of Soc. Sec.*, No. 1:20-CV-00630, 2021 WL 2688480, at *9 (N.D. Ohio June 30, 2021).

The ALJ overlooked or misconstrued material evidence about Sanford's cervical spine impairment, precluding meaningful review of whether his decision is supported by substantial evidence. This matter should thus be remanded for the ALJ to reassess Sanford's RFC. That reassessment would necessarily require consideration of Sanford's other challenges about her RFC, though the Court does not address those other challenges here.

### III.    Conclusion

For the reasons stated above, the Court **RECOMMENDS** that Sanford's motion, ECF No. 11, be **GRANTED**; that the Commissioner's motion, ECF No. 14, be **DENIED**; and that the ALJ's decision be **REMANDED**.

s/Elizabeth A. Stafford<br>ELIZABETH A. STAFFORD<br>United States Magistrate Judge

Dated: February 16, 2022

### NOTICE TO THE PARTIES ABOUT OBJECTIONS

Within 14 days of being served with this report and recommendation, any party may serve and file specific written objections to this Court's findings and recommendations.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  If a party fails to timely file specific objections, any further appeal is waived.  *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991).  And only the specific objections to this report and recommendation are preserved for appeal; all other objections are waived.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this report and

recommendation to which it pertains. Within 14 days after service of objections, **any non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 16, 2022.

s/Marlena Williams<br>
MARLENA WILLIAMS<br>
Case Manager